UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARJORIE DUNBAR                          JURY TRIAL DEMANDED
    Plaintiff

v.

TOWN Of STRATFORD                        AUGUST 1, 2016
    Defendant

## COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    Count One is an action pursuant to the Civil Rights Act of 1964 as amended alleging racial discrimination.

## II.    JURISDICTION

2.    Jurisdiction of this Court is invoked pursuant to 28 U. S. C. § 1332, 1343 (3) and 1367 of Title 28.

## III.    ADMINISTRATIVE PROCEDURES

3.    Within 180 days of the occurrence of the acts of which she complains, charges of employment discrimination were duly filed with the Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission by plaintiff against Defendant.

4.    Plaintiff received her Right to Sue letter from the Equal Employment Opportunity Commission May, 2016. Plaintiff has complied with all of the procedural prerequisites to suit under the statutes aforementioned, having exhausted his administrative remedies and having received a Right to Sue from the proper administrative agency.

**IV.    COUNT ONE:    CIVIL RIGHTS ACT OF 1964, AS AMENDED (RACE DISCRIMINATION)**

5.    Plaintiff is Marjorie Dunbar, a citizen and resident of the State of Connecticut.

6.    Defendant is the Town of Stratford whose principal place of business is located at 2725 Main Street in Stratford, Connecticut 06615.

7.    Plaintiff has been employed with the Town of Stratford as a clerical employee with the job title of Secretary for the Finance Director. She has been employed with the Town since April 3, 2000.

8.    Plaintiff is an African-American female.

9    On or about June 2010 all clerical non-union employees were given contracts to be signed by the end of July 2010. Employees were given the option to sign the contracts or be terminated. Plaintiff opted to sign the contract in order to maintain her employment.

10.    From July 2010 until December 19, 2012 Plaintiff did not receive a performance evaluation. In the past Plaintiff had always received excellent evaluations.

11.    When Plaintiff did receive an evaluation it was favorable and a recommendation was made for a salary increase.

12.    The Mayor John Harkins, Human Resources Director Ron Ing, Chief Administrative Officer Stephen Nocera and Finance Director Susan Collier all signed off on Plaintiff receiving a salary increase on December 26, 2012.

13.    . However, on January 2, 2013 Plaintiff was informed by the Finance Director that she would not get a raise because the CAO had advised that insurance premiums were expected to increase that year.

14.    Plaintiff was informed on 1/2/2013 by her supervisor, Susan Collier, that there was money available for her to have a raise and that she did not believe that it was fair that Plaintiff was not getting a raise.

15.    The raise that had been approved for Plaintiff was 2.5% however, other at will employees received an average of 23%.

16.    There were five other non-union employees similarly situated to Plaintiff. They hold the following positions: Kathleen Pacacha; HR Generalist I who has received an increase of $15,000 in a two year period and has been with the Town for 2 years (Caucasian); Susan Barksdale; HR Generalist II who has received a rise of $10,000 in a one year period and has been with the Town for 1 ½ years (Caucasian); a Legal Secretary who received a $10,000 lump sum increase in a one year period and has been with the Town for 21 years (Caucasian); the Mayor's Assistant received a $250 weekly stipend and has been with the Town for approximately 3 ½ years (African-American); the CAO's Administrative Assistant received a $35,000 lump sum in 2012 in addition to her yearly salary and has been employed for 4 years (Caucasian).

17.    On January 4, 2013 Plaintiff spoke with Ron Ing, HR Director, about not getting a raise.  She stated to him every clerical non-union employee and the increases they all have received and asked why she hadn't received an increase, "what is different about me that I have not received a raise".

18.     At the conclusion of the January 4 meeting with Ron stated he would speak to the Mayor and ask about whether he decided to give Plaintiff a raise. As of April 2013 Ron had not met with her regarding the outcome of his meeting with the Mayor.

19.     The last salary increase that I received was approved in July 2007 but not received by me until 2012. When Plaintiff asked for retroactive pay back to the time it was approved she was told that she should "be happy you are getting that dear".

20.     Plaintiff's increase was paid effective January 2012 rather than July 2009.

21.      On multiple occasions Plaintiff made inquiry as to why she was being treated differently than everyone else in the matter of salary increases. She asked how could all of the other non-union employees receive large raises and she did not get any. She specifically asked the HR Director and the finance Director whether they had looked at the bigger picture in this matter of her not getting a raise.

22.     In or about one year before she filed her CHRO complaint, someone had directed a racial comment at Plaintiff.   The white co-worker stated to Plaintiff that "black don't crack". Another co-worker also heard the statement.

23.     The HR Director was informed that the employee who made the racial comment regularly makes comments about African-Americans and Latinos.

24.     This matter was not handled properly because Plaintiff was instructed by HR Director Ron Ing that she should speak to the employee in question rather than it to be handled by HR.

25. Plaintiff's supervisor, Collier, reported the statement to the HR Director. However, nothing was ever said or done to redress the matter.

26. Plaintiff believes that she has been the victim of retaliation for having made this complaint of racial statement by a co-worker. For example on or about November 4, 2015 Plaintiff was denied access to her reserved handicapped parking space when the Town permitted heavy equipment to be stored in that space thus prohibiting her use.

27. On or about March 14, 2013 the proposed budget for the fiscal year 2014 effective July 1, 2014 called for increases for the Mayor's appointees and clerical non-union employees.

28. In addition to not receiving a raise, Plaintiff has also been denied other benefits, including longevity pay, perfect attendance, and cost of living increases.

29. Plaintiff went from I year and a day of sick time to just (12) sick days a year with a loss of any days not used.

30. In October 2012 Plaintiff asked her supervisor, Susan Collier If she could cash out her 2 weeks of unused vacation time. She stated that Plaintiff should remind her in November because the cash outs are in December.

31. Plaintiff approached her supervisor to remind her that she would like to cash out her vacation time.

32. Although Plaintiff was aware that paperwork was being prepared for the cash outs of unused vacation time for employees, Plaintiff was denied the opportunity to cash out her time.

33.     Plaintiff was informed by her supervisor that the "Mayor said No, Marge can't cash out her vacation time". Other employees including Caucasian employees received their cash outs but Plaintiff was not permitted to do so.

34.     Plaintiff is the only one of the non-union employees who has not received a raise and the only African-American to be so treated.  Defendant's failure and refusal to provide Plaintiff with a salary increase is racially discriminatory and in retaliation for her having raised a complaint of discrimination.

## V.     COUNT TWO:      CIVIL RIGHTS ACT OF 1964, AS AMENDED (RETALIATION)

1 – 34.        Paragraphs 1 – 34 of Count One are hereby incorporated by reference and made paragraphs 1 – 34 of this Count Two.

35.     The conduct alleged in paragraphs 1 – 34 were in retaliation for Plaintiff having previously opposed what she reasonably believed to be unlawful discrimination.

36.     Plaintiff has been damaged thereby.

        **WHEREFORE**, Plaintiff prays that the Court grant such relief as may be deemed appropriate, including but not limited to:

        (a) Compensatory damages;

        (b) Punitive damages;

        (c) Attorney's fees and costs

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues.

THE PLAINTIFF

By: ___/S/_Josephine S. Miller_____
Josephine Smalls Miller, FED BAR # ct27039
152 Deer Hill Avenue, Suite 302
Danbury, CT 06810
Tel: (203) 512-2795
Fax:  (203) 702-5188
Email: jmillerlaw@sbcglobal.net