UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARJORIE DUNBAR,
    Plaintiff,
v.
                                  No. 3:16 CV 1302 (WWE)
TOWN OF STRATFORD,
    Defendant.

## MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

In this action, plaintiff Marjorie Dunbar alleges that defendant Town of Stratford discriminated against her based on her race or color and retaliated against her in violation of Title VII.

Defendant has filed a motion for summary judgment on plaintiff's complaint. For the following reasons, the motion for summary judgment will be granted.

## A. BACKGROUND

The parties have submitted statements of undisputed facts, exhibits and affidavits. Although plaintiff filed her Rule 56 statement late, the Court accepts the filing. These materials reflect the following factual background.

Plaintiff is an African-American woman, who has been employed by defendant since 2000. She holds a non-union, at-will position of Finance

1

Secretary, providing clerical and administrative support to the Finance Director. According to plaintiff's deposition testimony, plaintiff has had "pretty much the same" job responsibilities since 2003. When she performs additional duties, plaintiff receives extra pay or "stipends."

Plaintiff received regular annual pay increases from 2003 through fiscal year ("FY") 2009. In FY 2010, then-Mayor James Miron sought raises for the non-union, at-will employees. This request was rejected by the Town Council.

In 2010, the non-union, at-will employees were required to accept two furlough days and a wage freeze. All non-union, at-will staff were required to sign letter agreements, standardizing many of the terms and conditions of employment. These agreements provided, in relevant part, that (1) raises were at the Mayor's sole discretion and recommendation, subject to the approval of the Town Council; and (2) that at-will employees would receive limited sick leave and no pay for longevity. The agreements contained no provision conferring a benefit for an employee with perfect attendance.

Raises

Plaintiff received a raise of about $1,200 on January 1, 2012, bringing

her annual salary to $57,690. The raise, which occurred during FY 2013, was recommended by plaintiff's supervisor, Susan Collier, Director of Finance; it was approved by Human Resources Director Ronald Ing, Chief Administrative Officer Stephen Nocera, and Mayor John Harkins. Later, in November 2012, plaintiff asked Collier and Ing for another raise. Plaintiff also requested that she be allowed to cash out her vacation days, although she understood that non-union, at-will staff were not permitted to do so.

Collier requested a 2.5% raise for plaintiff at the end of 2012. She knew that the proposal was not included in the Town budget; however, she submitted the request because she thought that money allocated for a vacant position could be directed toward plaintiff's raise.

Mayor Harkins declined the request for the pay increase to plaintiff's salary. He asserted that he based his decision upon information that there would be a dramatic increase in health insurance costs; consequently, he did not want to ask the Council to approve a mid-year raise that had not been previously included in the Town budget. Collier was informed that the decision was due to budget constraints.

In 2013, plaintiff signed a revised employee agreement dated March 26, 2013, which allowed her to carry over and to cash out her vacation time

for the first time.

On April 29, 2013, plaintiff filed a complaint to the Commission on Human Rights and Opportunities ("CHRO"), alleging that she had been denied a raise and was earning a different rate of pay due to a discriminatory animus.

On July 1, 2014, plaintiff and other non-union, at-will employees received raises. The raise for plaintiff's position had been approved as part of the FY 2015 budget. According to defendant, the raise was approved by Ing, Collier, Nocera, and Mayor Harkins.

Parking Space

In November 2015, plaintiff found heavy equipment blocking her reserved handicapped parking space as well as those of other employees. Plaintiff, who possesses a handicap tag, parked in another handicap parking place. She asserts that members of the Town administration saw her park in the handicap space and called the police. Police Officer Donald Schuler called her and questioned her about the validity of her handicap tag. He did not give her a ticket.

Plaintiff claims that she was denied a copy of the incident report regarding this situation and that the police have told her such report does

not exist.

### Racial Remarks

Plaintiff asserts that a year prior to filing her 2013 CHRO claim, a co-worker made a racial remarks to her. Plaintiff maintains that the co-worker complimented her hairstyle and then stated, "Black don't crack." Additionally, plaintiff asserts that on another occasion, the co-worker said, "I am catching up to you," in reference to the co-worker's tan. According to Ing, plaintiff asked him what could be done about inappropriate comments from a co-worker.

He recalls inquiring whether she wanted to file a complaint, and that she declined to do so at the time. Plaintiff disputes Ing's recollection.

### Plaintiff's Asserted Comparators

Plaintiff claims as comparators Rickey Williams, Gail Nobili, Raynae Serra, Susan Barksdale, and Kathleen Pacacha.

Williams is an African-American male and has a base salary of $42,000. Due to his performance of additional duties for the Metro North/Amtrak parking lot, he was paid a weekly stipend of $250, bringing his total compensation to $55,000 per year. The railroad stipend was paid out of the Town railroad fund

5

Nobili is a Caucasian woman, who worked as a Paralegal/Legal Secretary[1] to the Town Attorney. She received a $10,000 salary increase on July 1, 2011. Prior to 2011, she had not received a raise since 2008. The salary increase, which had been included in the Town budget, was approved by the Town Council. A July 1, 2011, Personnel Action Form indicates that Nobili's raise was requested in light of "increased responsibilities." Nobili's duties had broadened to encompass the processing of taxpayer car accident claims, and the duties of Citation Clerk, which had formerly been handled by a contractor.

Serra received a lump sum increase of $35,000 when she was promoted from Administrative Analyst to Operations Coordinator for the Department of Public Works.[2]

Pacacha and Barksdale are Caucasian women who were hired in 2010 as Human Resources Generalists in the Human Resources Department. Ing hired Pacacha and Barksdale at a lower rate of pay than

---

[1] In 2014, her position was reclassified as "Paralegal."

[2] The Court does not appear to have information about Serra's race or color, or the date on which she received the lump sum increase.

what had been budgeted for their positions. He promised that they would receive incremental raises in 2011 and 2012, provided that they learned the requisite duties and skills for their positions. These pay increases had been included within the budgets that were approved in advance by the Council for Human Resources.

Plaintiff filed the instant complaint after the CHRO dismissed the plaintiff's administrative charge on October 22, 2015.

## B.   DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v.

7

Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Disparate Treatment

Plaintiff alleges that defendant discriminated against her on the basis of her race (1) when it declined to approve a salary increase after it had been requested by Collier at the end of 2012, and (2) when it reduced certain fringe benefits with regard to longevity pay, perfect attendance provisions, cost of living increases, sick days, and vacation cash-out. Defendant maintains that plaintiff cannot raise an inference of discrimination and cannot show as pretext defendant's proffered non-discriminatory reasons for its employment decision.

The Court analyzes plaintiff's claims of disparate treatment according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v.

8

Burdine, 450 U.S. 248, 252-56 (1981). See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 82-83 (2d Cir. 2015).

To establish her prima facie claim of discriminatory treatment, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that the alleged adverse employment action was not made for legitimate reasons. Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Plaintiff may raise an inference of discrimination by showing that her employer treated her less favorably than similarly situated employees outside her protected class for a similar offense. Graham v. Long Island

9

R.R., 230 F.3d 34, 39 (2d Cir. 2000). However, plaintiff must demonstrate that these comparators are similarly situated in all material respects and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).

For purposes of ruling on this motion, the Court assumes that plaintiff has established her prima facie case of discrimination. However, plaintiff has not adduced evidence evincing an inference that discriminatory animus animated defendant's employment decision with regard to either the reduction in fringe benefits or the 2012 salary increase request.

Relevant to the reduction in fringe benefits, defendant maintains that plaintiff and other clerical, non-union, at-will employees signed a 2010 letter agreement that provided for the same reduction in fringe benefits.

As its legitimate, non-discriminatory reason for its decision not to approve her salary increase, defendant proffers that budgetary concerns due to increased medical costs prevented approval of the requested salary increase. Defendant also points out that the requested salary increase had not been previously included in the budget and that no employee would receive a salary increase if the increase had not already been included in the Town budget.

Plaintiff has provided no evidence indicating that other clerical, non-union, at-will employees outside of her protected class received more fringe benefits than those benefits set forth in her 2010 letter agreement.

In her Rule 56 statement, plaintiff admitted the following statement of fact in defendant's Rule 56 statement: "There was nobody else who had received or would receive a raise that was not budgeted for."

Plaintiff has asserted that certain individuals – Williams, Nobili, Serra, Barksdale, and Pacacha – outside of the protected class did receive pay raises. However, plaintiff has not demonstrated that these individuals are similarly situated to her in all material respects and have engaged in comparable conduct so as to raise an inference of discrimination.

<u>Williams</u>

Williams, as an African American, is in the plaintiff's protected class based on race and color. Additionally, he received increased compensation in the form of stipends for additional work rather than a salary increase, which Collier had proposed for plaintiff.

<u>Nobili</u>

Nobili's salary raise had been in the Town budget that was approved by the Council, and she had taken on additional responsibilities in

processing car accident claims and becoming the Citation Clerk.   By contrast, plaintiff has not shown that she took on any additional responsibilities.   Further, it is undisputed that her salary increase had not been included in the Town budget.

### Serra

Plaintiff has stated that she and Serra "have two different functions" with different jobs.   Further, plaintiff has not provided any evidence demonstrating that she and Serra performed comparable duties.

### Pacacha and Barksdale

Plaintiff has not demonstrated that Pacacha and Barksdale performed clerical duties comparable to her position.   Further, plaintiff admitted defendant's statement that Pacacha and Barksdale were hired at a lower rate of pay, with the agreement that they would receive incremental raises in 2011 and 2012.

Accordingly, plaintiff has failed to raise an inference of disparate treatment based on her race or color.

### Retaliation

Plaintiff alleges that the blocking of her reserved handicapped parking space by heavy equipment in 2015 constitutes retaliation for her complaints

to Ing about a co-worker's racial comments in 2012. In her deposition, she stated that she was retaliated against for filing the 2013 CHRO complaint by having her reserved parking space blocked, by being denied freedom of information requests, and by not receiving any salary increases.[3] Defendant asserts that plaintiff cannot establish a prima facie case of retaliation.

In order to establish a prima facie case of retaliation, plaintiff must show that "(1) she had engaged in protected activity, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). To prevail on a retaliation claim, plaintiff need not prove the merit of her underlying complaint of discrimination, but only that she had a "good faith, reasonable belief that the underlying employment practice was unlawful." Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013).

---

[3] The Court will construe the complaint of retaliation most liberally to assert retaliatory acts of denial of pay increases, denial of freedom of information requests, and blocking of her parking space.

In the context of retaliation, the applicable standard for adverse employment action is broader than that applied to discrimination claims. Santiesteban v. Nestle Waters North America, Inc., 61 F. Supp. 3d 221, 241 (E.D.N.Y. 2014). A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co., 548 U.S. 53, 68 (2006). Adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities...;" it may include "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Chung v. City Univ. of N.Y., 605 Fed. Appx. 20, 22 (2d Cir. 2015). However, actions that are "trivial harms" such as "petty slights or minor annoyances that often take place at work and that all employees experience" are not materially adverse. Burlington, 548 U.S. at 68.

A plaintiff can establish a causal connection between the protected activity and the adverse employment action through indirect evidence such as showing a temporal proximity between the protected activity and

retaliation, or the disparate treatment of comparable employees who engaged in similar conduct.  Fullwood v. Sodexo, Inc., 2018 WL 3439866 (W.D.N.Y. July 17, 2018).  To satisfy the causation showing based on temporal proximity, the retaliatory conduct must have followed "very close" in time after the protected activity.  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  The Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated." Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013). Thus, the Court may "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."  Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-retaliatory reason for the challenged employment decision; plaintiff must then "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002).

Even assuming that the asserted retaliatory acts – blocking the

parking space, denying freedom of information acts, and failing to increase her pay – all constitute adverse employment action, the Court finds that summary judgment should enter in favor of defendant.

The incident concerning her parking space occurred more than two and a half years after her CHRO complaint filing. The Court finds, based on the circumstances of this action, that more than two years between the protected activity and the blocking of the parking space does not support an inference of causation. See Bonano v. Staniszewski, 2016 WL 11263168, at *10 (E.D.N.Y. Sept. 2, 2016) (citing cases finding one year, two years, and three years to be attenuated for purposes of showing causation).

The Court has no information about the denial of freedom of information requests except that plaintiff asserts that she was not provided with a copy of the incident report relative to the parking space incident, and that the police have told her that such report does not exist. However, such denial also occurred in 2015, and plaintiff has offered no evidence to establish a causal connection between the asserted retaliatory conduct by the police and her complaints about discrimination to the CHRO or defendant.

Finally, with regard to her claim that defendant retaliated against her by failing to increase her salary, plaintiff has not adduced evidence to support such a claim of retaliation. Plaintiff does not dispute she received a salary increase in 2014. As previously discussed, plaintiff's asserted comparators are not so similarly situation in all material respects to give rise to an inference of discriminatory or retaliatory animus.

Accordingly, the Court will enter summary judgment in defendant's favor.

### C. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. #22] is GRANTED. The clerk is instructed to close this case.

Dated this 7th day of August, 2018 at Bridgeport, Connecticut.


/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE